UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **TAMMY VENABLE** | **CASE NO.  6:23-CV-01046** |
| **VERSUS** | **JUDGE ROBERT R. SUMMERHAYS** |
| **U S COMMISSIONER SOCIAL SECURITY ADMINISTRATION** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action.

### Administrative Proceedings

Claimant, Tammy Venable, fully exhausted her administrative remedies before filing this action in federal court. She filed an application for disability insurance benefits alleging disability beginning on April 1, 2019. (Rec. Doc. 5-1, p. 149). Her application was denied. She then requested a hearing, which was held on February 14, 2023 before Administrative Law Judge Steven Rachal. (Rec. Doc. 5-1, p. 32-57). The ALJ issued a decision on March 1, 2023, concluding that Claimant was not disabled within the meaning of the Social Security Act from the claimed

disability onset date through the date of the decision. (Rec. Doc. 5-1, p. 18-26). Claimant requested that the Appeals Council review the ALJ's decision, but the Appeals Council found no basis for review. (Rec. Doc. 5-1, p. 5). Therefore, the ALJ's decision became the final decision of the Commissioner for the purpose of judicial review. *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005). Claimant then initiated this action, seeking review of the Commissioner's decision.

## **Summary of Pertinent Facts**

Claimant was born on September 24, 1964. She was 54 years old on the alleged disability onset date and 58 years old at the time of the ALJ's decision. She has a high school diploma. Prior to her alleged disability, she worked in inside sales and in a customer service/administration-type position, and as a rancher. (Rec. Doc. 5-1, p. 37-39). She alleged that she has been disabled since April 1, 2019, following breast cancer, then back surgeries, with future surgery contemplated, and due to COPD. The medical records in the record reveal the following pertinent history:

- Dr. Joseph Gillespie performed a cervical surgery in 2011, apparently with no further issues. She returned to Dr. Gillespie for low back and neck pain beginning in 2018. (Rec. Doc. 5-1, p. 275-81).

- Claimant was diagnosed with breast cancer and underwent a double mastectomy in April 2019. She did not have to undergo radiation or chemotherapy, but she was prescribed Arimidex. (Rec. Doc. 5-1, p. 556-69; 656 et seq).

- Claimant treated at WellSmart Pulmonology for dyspnea, moderate COPD, and shortness of breath in June 2020. She smoked ½ to one pack of cigarettes

per day. She was given an inhaler and referred to pulmonology following pulmonary stress testing. (Rec. Doc. 5-1, p. 256-67).

- Records from Dr. Daniel Bourque, OB/GYN, indicate Claimant was diagnosed with breast cancer and underwent a double mastectomy in April 2019. She also suffered from depression for which she was prescribed Effexor and Prozac. She has a notable history of gynecological problems and treatment, including a hysterectomy in October 2018. (Rec. Doc. 5-1, p. 283-337).

- Claimant treated for hypertension at Cardiovascular Institute of the South during 2020 and 2021, with a noted history of stage II breast cancer, possession of a colon cancer gene, and shortness of breath. She had been a smoker since 1984 and attempted the smoking cessation program. Cardiac stress tests were normal. (Rec. Doc. 5-1, p. 342-96).

- Claimant treated with Dr. Jeff Brown for primary care and surgery clearance. She treated for a variety of issues, including high blood pressure and cholesterol, sinusitis, anxiety, depression, COPD, GERD, cervical disc disorder, granuloma in the left lung, and ongoing UTIs. In 2018, it was noted that she was working on a farm doing physical labor and getting at least 150 minutes of moderate exercise daily, which caused her to lose weight. (Rec. Doc. 5-1, p. 417; 815-20).

- On June 17, 2021, Claimant presented to Dr. Jason Cormier with lumbar back pain. She had gone to urgent care and when undergoing traction, she felt pain radiating into her abdomen and her hands and feet went numb. Her pain was sharp and shocking, and she had developed lower extremity weakness. Due to lumbar instability and disc herniations with neuropathy and spondylolisthesis, Dr. Jason Cormier performed an anterior discectomy and interbody arthrodesis with grafts at L2-3 and L3-4 and hemilaminectomy and interbody arthrodesis with graft at L4-5 on June 30, 2021. An epidural mass at L4-5 was evaluated for fibrosis. The records note a prior ACDF removal of hardware at C5-6 with a re-do ACDF at C6-7 in April 2011 (Rec. Doc. 5-1, p. 461-77).

- During post-operation rehab, she reported significantly less pain. She reported that by one-month post-op, she was walking daily up to six miles. She continued to report ongoing pain in her left lower back. By August 2021, she felt better with exercise, took pain medication in the morning but did not need

3

any for the remainder of the day/night. She was sleeping well. (Rec. Doc. 5-1, p. 482-511). In September 2021 she reported that she felt great and was very satisfied with the results. Dr. Cormier stated that she should remain in rehab for six to eight months due to the complexity of the operations and refrain from work for the following six months. (Rec. Doc. 5-1, p. 714).

- Claimant returned to Dr. Cormier in March 2022 reporting intermittent shocking and shooting pain into the bilateral lower extremities with give-way sensations. She denied falls, numbness and changes in bowel or bladder function. She described a pulling pain in the right buttock, hip and leg. Her symptoms interrupted her sleep and were aggravated with prolonged sitting and standing. Her physical exam showed normal posture, moderate tenderness, and painful range of motion. Straight leg raise tests were negative. According to Dr. Cormier in April 2022, she was not a candidate for hardware removal. She was to seek pain management and continue home exercises and stretching. (Rec. Doc. 5-1, p. 689-98).

- A lumbar xray on March 8, 2022 revealed postsurgical changes with questionable loosening involving the L2 pedical screws bilaterally and also the right L5 pedicle screw. (Rec. Doc. 5-1, p. 688). A CT exam of her lumbar spine in March 2022 showed no hardware fracture or loosening, with bilateral pars defects at L5 without spondylolisthesis and fractures involving the L5 pedicles bilaterally oriented in the coronal plane. An August 2021 x-ray of her lumbar spine showed persisting Grade 1 retrolisthesis at L2-3. (Rec. Doc. 5-1, p. 479-80).

- After Dr. Cormier apparently cancelled three appointments at the end of 2021, Claimant began seeing Dr. George Williams in May 2022 with complaints of electric pain occurring intermittently and locking in the lumbar region. She reported that her symptoms were relieved temporarily with physical therapy after the surgery but that they had worsened by September 2021. She had radiating pain into the buttock with a shocking sensation in the left leg. She walked with a normal gait and without walking limitation. She had undergone an injection, but the pain was returning. Dr. Williams recommended an extraction of hardware, replacement of L2 through L5 and now a TLIF at L5-S1 with iliac fixation. It would be performed robotically. A handwritten note at the top of the record suggests Opelousas General denied surgery and referred Claimant to Ochsner-LSU. (Rec. Doc. 5-1, p. 685-87).

4

- Records from Dr. Gillespie for visits in 2022 support Claimant's ongoing complaints of shocking pain and her leg wanting to give out. She presented each visit with a steady gait and ambulating without assistance. Though many of the handwritten records are difficult to decipher, it appears that Claimant had decreased sensation to touch relative to the lumbar area and perhaps some numbness. Dr. Gillespie gave her injections and a thoracolumbar support brace. He would not authorize any more Percocet and maintained her status as unable to work. (Rec. Doc. 5-1, p. 821-29).

- Dr. Guthikonda with Ochsner Health reviewed Claimant's CT Myelogram of the lumbar spine and opined that the result looked good. There was no stenosis (narrowing of the spinal cord) and the L2-5 postoperative changes looked as expected after a spinal surgery. He provided the options of conservative treatment such as physical therapy, medication, or anything to manage the pain, or a spinal cord stimulator trial to block the pain sensations. (Rec. Doc. 5-1, p. 839-40).

- Although not contained in the medical records in the administrative record, Claimant testified that she was going to have another back surgery in February 2023 apparently to repair or replace the hardware in L2-L5. (Rec. Doc. 5-1, p. 39-41).

Claimant testified at the hearing (prior to the anticipated surgery) that she could not stand or walk for longer than five to nine minutes and could not lift or carry anything heavier than a gallon of milk due to low back pain. (Rec. Doc. 5-1, p. 43-45). She occasionally used crutches. (Rec. Doc. 5-1, p. 48-49). She lived with her boyfriend and was able to drive and do limited chores. She required assistance washing her hair. (Rec. Doc. 5-1, p. 46-47; 51-52). She is a smoker and suffers from COPD for which she uses a breathing machine. Her COPD is triggered by exertion, smoke, odors, and hot weather. (Rec. Doc. 5-1, p. 47-48).

The ALJ found Claimant was capable of doing sedentary work and that she was capable of performing past relevant work in invoicing, such that she was not disabled. Claimant now seeks reversal of the Commissioner's adverse ruling.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id*. (citations omitted).

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173. A court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner.

6

*Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence and credibility assessments are for the Commissioner to resolve, not the courts. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991). Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Wren v. Sullivan*, 925 F.2d at 126.

### B. Entitlement to Benefits

The Disability Insurance Benefit program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. See 42 U.S.C. § 423(a). See also *Smith v. Berryhill*, 139 S.Ct. 1865, 1772 (2019). See also *Smith v. Berryhill*, 139 S.Ct. at 1772. A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled if his physical or mental impairment or impairments are so severe that he is unable do his previous work and considering his

age, education, and work experience, cannot participate in any other kind of substantial gainful work that exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

### C. Evaluation Process and Burden of Proof

A sequential five-step inquiry is used to determine whether a claimant is disabled. The Commissioner must determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. § 404.1520.

Before going from step three to step four, the Commissioner evaluates the claimant's residual functional capacity by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302. If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

### D.     **The ALJ's Findings and Conclusions**

The ALJ determined at step one that Claimant has not engaged in substantial gainful activity since April 1, 2019. (Rec. Doc. 5-1, p. 20). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that Claimant has the following severe impairments: degenerative disc disease, lumbar stenosis and radiculopathy, status post cervical and lumbar fusions, chronic obstructive pulmonary disease,

9

tobacco/cigarette use, residual effects of breast cancer treatment, hypertension, valvular hear diseases. (Rec. Doc. 5-1, p. 20-21). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that Claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. (Rec. Doc. 5-1, p. 21-22). Claimant does not challenge this finding.

The ALJ found that Claimant has the residual functional capacity (RFC) to perform sedentary work, subject to several physical limitations. (Rec. Doc. 5-1, p. 22-25). Claimant challenges this finding.

At step four, the ALJ found that Claimant is capable of performing past relevant work of invoicing and therefore did not reach step five. (Rec. Doc. 5-1, p. 25). Claimant challenges this finding.

### E. The Allegations of Error

Claimant generally alleges the ALJ erred in finding her not disabled or, alternatively, in failing to award benefits for a closed period.

### F. Remand for consideration of new evidence.

Claimant urges the Court to remand for consideration of evidence related to her most recent surgery, the records of which were not available at the time of the hearing or appeal.

> When new evidence becomes available after the Secretary's decision and there is a reasonable probability that the new evidence

> would change the outcome of the decision, a remand is appropriate so that this new evidence can be considered. To justify a remand, 42 U.S.C. § 405(g) requires that the evidence is "new" and "material" as well as a showing of "good cause" for failing to provide this evidence at the original proceedings. We review new evidence only to determine if a remand is appropriate.
> \*\*\*
> Reviewing the materiality of new evidence requires us to make two separate inquiries: (1) whether the evidence relates to the time period for which the disability benefits were denied, and (2) whether there is a reasonable probability that this new evidence would change the outcome of the Secretary's decision.

*Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995) (citations omitted).

In *Ripley*, the court held that remand was warranted for consideration of new medical evidence regarding the claimant's surgery which took place after the hearing and which revealed significant scar tissue from a prior surgery. *Id*. Likewise, remand is warranted in this case. Records pertaining to Claimant's 2023 surgery were not available at the time of the hearing and are new evidence. Such records are also material in that evidence of Claimant's most recent surgery relates back to her original June 2021 surgery. The evidence in the records show that a repeat procedure was contemplated to repair loosened hardware. The ALJ even commented on the extensiveness of Claimant's hardware. (Rec. Doc. 5-1, p. 39-41).

Further, the Court finds that there is a reasonable probability that the new evidence would change the Commissioner's decision. Claimant's treating physicians have indicated she is unable to work since her June 2021 surgery and up to the time of the ALJ hearing. Certainly, she would have remained unable to work for some

11

period after the 2023 surgery. Hence, the new evidence should have a significant impact on the Commissioner's decision. The Court agrees that remand is warranted for consideration of medical records pertaining to Claimant's 2023 surgery and subsequent recovery and rehabilitation.

## Conclusion and Recommendation

For the foregoing reasons, this Court recommends that the Commissioner's decision be REVERSED and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to accept all evidence pertaining to Claimant's most recent surgery, including recovery and rehabilitation, and to then re-evaluate whether Claimant is disabled. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act ("EAJA").[1]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after

---

[1] See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

12

receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[2]

Signed in Lafayette, Louisiana, this 22nd day of February, 2024.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[2] See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).